UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.:

JAMES WATSON

  Plaintiff,
v.

JACKPOT GROUP, LLC,
d/b/a 17th St Thai Sushi

  Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

  Plaintiff, James Watson ("Plaintiff") hereby sues Defendant, Jackpot Group, LLC, d/b/a 17th St Thai Sushi ("Defendant"), for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12181-12189 ("ADA"), 28 C.F.R. Part 36, *et seq*.

  1. Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

  2. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq*. *See also* 28 U.S.C. § 2201 and § 2202.

  3. Plaintiff is a resident of the state of Florida, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, and the ADA Amendments Act of 2008, ("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

  4. Plaintiff is legally blind, and substantially limited in performing one or more major

life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, et seq., and 42 U.S.C. §3602(h).

5. Plaintiff uses the internet to help him navigate a world of goods, products and services like the sighted. The internet and websites provide him with a window into the world that he would not otherwise have. He brings this action against Defendant for offering and maintaining a website that is not fully accessible and independently usable by visually impaired consumers. Plaintiff utilizes the JAWS Screen Reader software, which is one of the most popular reader Screen Reader Software ("SRS") utilized worldwide to read computer materials and comprehend the website information which is specifically designed for persons who are blind or have low vision. Due to his disability, Plaintiff is unable to read computer materials and/or access the internet and websites for information without the assistance of appropriate and available auxiliary aids, and screen reader software specially designed for the visually impaired.

6. The Screen reader software translates the visual internet into an auditory equivalent. at a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link

says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

7. Plaintiff is also an advocate of the rights of similarly situated disabled persons and is a "tester" for the purpose of asserting his civil rights. As such, he monitors websites to ensure and determine whether places of public accommodation and/or their websites are in compliance with the ADA.

8. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. The place of public accommodation that the Defendant owns, operates, or leases is located within this District.

9. Defendant, Jackpot Group, LLC, is a Florida limited liability company that owns, operates, and/or maintains the restaurant known as "17th St Thai Sushi", located at 1515 SE 17th Street, Ste 100, Fort Lauderdale, Florida 33316, and open to the public. As such a place of public accommodation subject to the requirements of Title III of the Americans with Disabilities Act ("ADA") and its implementing regulations, as defined by 42 U.S.C. §§ 12181(7), 12182, and 28 C.F.R. § 36.104. Defendant's business and services are also offered and made available to the public through its website.

10. As the owner, operator, and/or controller of a restaurant open to the public, Defendant is a private entity that owns and/or operates "a restaurant, bar, or other establishment serving food or drink," and is therefore a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(B), and 28 C.F.R. § 36.104(2).

11. Because Defendant operates a restaurant open to the public, each of its physical locations constitutes a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulations, including 42 U.S.C. §§ 12181(7)(B), 12182, and 28 C.F.R. § 36.104. Defendant also promotes and offers its business, services, and merchandise to the public through its website, which is integrated with and serves as an extension of Defendant's physical place of public accommodation.

12. Since the effective date of the ADA, Defendant has constructed, caused to be constructed, and/or become a beneficiary of the website: https://www.17thstreetthaisushifl.com (the "website"). Defendant is the owner, operator, lessor, and/or lessee of the website, which operates in conjunction with and as a complementary and supplemental extension of Defendant's restaurant location. The website provides the public with information regarding the goods, services, accommodations, privileges, benefits, and facilities available to patrons at the "17th St Thai Sushi" physical location. Defendant also offers and sells services and merchandise to the public through the website, which functions as a point of sale for goods and services available in, from, and through Defendant's restaurant location. Upon information and belief, Defendant regularly updates, maintains, and derives substantial benefit from the operation of the website in connection with its brick-and-mortar business.

13. The website is offered as a means for the public to become familiar with "17th Street Thai Sushi" menu selections, hours of operation, restaurant location, and other information Defendant seeks to communicate to the public. Through the website, the public may place orders for delivery or carryout, make reservations, inquire about catering or private events, and contact the restaurant directly online. The website also provides links to Defendant's social-media platforms for additional information and engagement. By offering these features, which enable the

public to access information, interact with the business, and engage in activities related to visiting Defendant's physical restaurant, the website functions as an integral component of the goods and services offered by Defendant and is therefore subject to the requirements of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181(7), and its implementing regulations, including 28 C.F.R. § 36.104(2).

14. The website is an extension of Defendant's place of public accommodation. Through the website, Defendant extends its public accommodation into individuals' homes, portable devices, and personal computers. The website constitutes a service, facility, privilege, advantage, benefit, and accommodation of Defendant's place of public accommodation, as it provides essential information about the restaurant, including menu selections, hours of operation, location, and the ability for users to contact the restaurant directly online. The website also includes links to Defendant's social-media platforms to provide additional updates and information.

15. Defendant's website provides access to the benefits of Defendant's physical restaurant, and Plaintiff was denied those benefits when she could not access Defendant's website. Accordingly, the website is integrated with, and has a sufficient nexus to, Defendant's brick-and-mortar location. Therefore, it is governed by the following provisions:

    a. 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial

of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

    c.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

    d.    42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

    e.    42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

    f.    42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

    g.    42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are

necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

   h. 42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

16. As the owner, operator, and/or beneficiary of the subject website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a website that is accessible to and usable by visually impaired people so that they can enjoy full and equal access to the website and the content therein, including the ability to make a reservation, shop in the online store and contact the restaurant through the website.

17. Since the website is open to the public through the internet, by this nexus the website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar location that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical locations. As such, Defendant has subjected itself and the website to the requirements of the ADA.

18. Plaintiff attempted to access and/or utilize Defendant's website to test for

accessibility, and educate himself as to " 17th Street Thai Sushi" hours of operation, location, menu selection, but was unable to, and he is still unable to enjoy full and equal access to the website and/or understand the content therein because several portions of the website do not interface with the JAWS Screen Reader software. Features of the website that are inaccessible include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i. Guideline 2.4.3. Focus Order. The 'Group Order' button is not accessible on the online ordering page. It does not receive focus when navigating with the tab key, preventing screen reader users from accessing this feature. When clicked with a mouse, the button opens a 'Group Order' dialog where users can set an order limit per guest and begin a group order. Because this button cannot be reached using keyboard navigation, screen reader users are unable to initiate or complete a group order. *Note: There are no accessibility options available on the site.

ii. Guideline 2.4.3. Focus Order (2). Menu items on the online ordering page are not accessible with the keyboard. Tab focus moves through the category buttons at the top of the page; however, selecting a category button only results in a visual page scroll, and focus does not move to the corresponding section of the menu with tab or arrow key navigation. After the 'Icon Legend' button is announced, the next tab key press moves focus directly to the footer, skipping all menu items entirely. As a result, none of the clickable menu items are reachable with the keyboard, and screen reader users are unable to complete an online order.

iii. Guideline 2.4.3. Focus Order (3). When an item is added to the cart on the online ordering page, no confirmation is provided to screen reader users. After the 'Add to Cart' button is selected, the screen reader announces, "Loading…", and the next tab key press then returns focus to the top of the page. Focus does not move to the cart region or to any newly added content, and no announcement is made to confirm that the item was successfully added. Because the cart section is not encountered prior to adding an item and is not announced when it updates, users are left without any indication that their action was successful or where the cart is located. To access the cart, users must continue tabbing through unrelated page content for approximately 35 tab key presses before the cart is reached, which is not an expected or reliable experience for completing an order. *Note: Since users could not tab to any of the menu items on this page (as noted in Issue 2.4.3 (2)), a mouse was used to select an item and open its dialog, which was then navigable with the tab key.

iv. Guideline 3.3.1 – Error Identification. Error notifications are not announced on the 'Sign Up For Deals' dialog. If the form is submitted with invalid or incomplete information, an error message is displayed visually, but it is not announced or given focus. Instead, the screen reader announces, "Visited link sign up for deals," and then the next tab key press moves focus out of the dialog and into the toolbar, providing no indication that an error has occurred. When focus later returns to the dialog, the invalid fields are announced the same

    way as before and are not identified as having an error. The error message is not programmatically associated with the affected field, and no information is provided to indicate what needs to be corrected. As a result, screen reader users are not informed that errors occurred or how to resolve them.

    v. Guideline 4.1.2 - Name, Role, Value. On the checkout page, multiple interactive elements are unlabeled, preventing screen reader users from understanding key controls needed to complete the checkout process. For example, when tab focus moves to the 'Terms & Conditions' link at the top of the page, it is announced only as "unknown." Afterward, the next three tab key presses result in no announcements, even though focus visibly moves to different elements. Focus then moves to the 'PayPal' button, which is also announced only as "unknown," providing no information about its purpose. Once focus reaches the 'Credit Card Info' section, all input fields are announced only as "unknown," and their labels are not conveyed through tab or arrow key navigation. As a result, screen reader users cannot identify the purpose of the payment-related fields or options on the checkout page, making it impossible to complete the checkout process independently.

    19.    The fact that a portion of the WCAG 2.1 Level A and AA Guideline violations may relate to various third-party vendor platforms does not absolve Defendant of culpability. Because restaurants are places of public accommodation, their operators are subject to the requirements of Title III as well. 42 U.S.C. § 12181(7)(b). Those requirements include a prohibition against subjecting patrons with disabilities to discrimination "through contractual, licensing, or other arrangements," such as use of third-party vendors' inaccessible platforms for making reservations. 42 U.S.C. § 12182(b)(1)(A); *See Kohler v Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1264-66 (9th Cir. 2015) (Pre-existing obligations under Title III of the ADA may not be avoided through contractual arrangements, and those obligations remain even where compliance is under control of another party); *Robles v. Yum! Brands, Inc.*, 2018 WL 566781, *4 (C.D. Cal. January 24, 2018) (restaurant operators are liable for website and mobile app accessibility where there is a nexus to the restaurants themselves).

    20.    Plaintiff continues to attempt to use the website and/or plans to continue to attempt to use the website in the near future, and in the alternative, Plaintiff intends to monitor the website, as a tester, to determine whether it has been updated to interact properly with screen reader

software.

21.     That Plaintiff could not communicate with or within the website left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same browsing, shopping experience, and access to the same information, sales, and services, as provided at the website and in the physical location as the non-visually disabled public.

22.     As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements. Defendant's violations have resulted in Defendant denying Plaintiff effective communication on the basis of her disability in accordance with 28 C.F.R. Section 36.303 *et seq*.

    a.     by depriving Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42 U.S.C. § 12182(a));

    b.     in the denial of providing Plaintiff the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

    c.     in failing to allow Plaintiff to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

    d.     by providing Plaintiff a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals (unless such

action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others) (42 U.S.C. § 12182(b)(1)(A)(iii));

      e.    by failing to afford Plaintiff goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the disabled individual (42 U.S.C. § 12182(b)(1)(B));

      f.    notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying Plaintiff the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

      g.    by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities (unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations) (42 U.S.C. § 12182(b)(2)(ii)); and,

      h.    by a failure to take such steps as necessary to ensure that disabled individuals are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services (unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden) (42 U.S.C. § 12182(b)(2)(iii)).

23.    As a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the website due to his blindness and the website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities

will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

24. As the result of the barriers to communication which are present within the website and by continuing to operate and/or benefit from the website with such barriers, Defendant has contributed to Plaintiff's frustration, humiliation, sense of isolation and segregation and has deprived Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the public.

25. By encountering the discriminatory conditions at Defendant's website and knowing that it would be a futile gesture to attempt to use the website unless he is willing to endure additional discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the public.

26. Plaintiff has suffered (and will continue to suffer) direct and indirect injury as a result of Defendant's violations until Defendant is compelled to comply with the ADA and conform the website to WCAG 2.1 Level A and AA Guidelines.

27. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by Defendant. Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure herself that this website has complied with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

28. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant under 42 U.S.C. § 12205 and 28 CFR 36.505.

29. Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

30. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

**WHEREFORE,** Plaintiff, James Watson demands judgment against Defendant, Jackpot Group, LLC, d/b/a 17th St Thai Sushi, and requests the following injunctive and declaratory relief:

a. The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

b. The Court issue a Declaratory Judgment that determines that Defendant's website is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

c. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

d. That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

e. That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time so

as to allow Defendant to undertake and complete corrective procedures;

f.  That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

g.  An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

h.  Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted this January 20, 2026.

By: */s/ J. Courtney Cunningham*
Juan Courtney Cunningham, Esq.
FBN: 628166
**J. COURTNEY CUNNINGHAM, PLLC**
8950 SW 74th Court, Suite 220,
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*